180 Cal.App.4th 1363 (2010)
103 Cal. Rptr. 3d 873
THE PEOPLE, Plaintiff and Respondent,
v.
DANNY LEE SKILES, Defendant and Appellant.
No G040808.
Court of Appeals of California, Fourth District, Division Three.
January 11, 2010.
As modified January 21, 2010.
CERTIFIED FOR PARTIAL PUBLICATION[*]
*1365 Susan L. Ferguson, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Peter Quon, Jr., and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
BEDSWORTH, J.
Appellant Danny Lee Skiles was convicted of burglary and receiving stolen property. He had previously been convicted of manslaughter in Alabama, and based on that conviction, the trial court found true the allegation Skiles had suffered a serious felony for purposes of the "Three Strikes" law. (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).)[1] Skiles contends there is insufficient evidence to support the court's finding in this regard, and he was denied his constitutional right to a jury trial on that allegation. He also claims the court erred in failing to stay his sentence for receiving stolen property and by limiting his presentence custody credits. As *1366 the Attorney General concedes, Skiles's sentencing claims are valid, and therefore we will modify the judgment to stay the receiving count and award him proper presentence credit. In all other respects, we affirm.

FACTS
Saida Hudson returned to her Costa Mesa motel room one night to find it had been burglarized. Skiles had been seen in the area around the time of the burglary, and his fingerprints were found on one of Hudson's windowpanes. Upon his arrest, he was found with several items that were taken in the burglary.
The jury convicted Skiles of residential burglary and receiving stolen property, i.e., the items taken in the burglary. Then, upon finding that Skiles's Alabama manslaughter conviction constituted a serious felony under California law, the court sentenced him as a second strike offender to concurrent four-year terms for his crimes. Based on the Alabama prior, the court also added a five-year enhancement pursuant to section 667, subdivision (a)(1), bringing Skiles's combined term of imprisonment to nine years.

I[*]

II
(1) The remaining issues relate to the trial court's true finding on the prior serious felony allegation. Relying on Apprendi v. New Jersey (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] and its progeny, Skiles contends he was entitled to have a jury decide whether his Alabama conviction constituted a serious felony for purposes of the Three Strikes law. However, while Apprendi dictates generally that defendants be afforded jury trials on facts that lead to a sentencing increase beyond the prescribed statutory maximum, it does not apply to factual determinations relating to prior convictions. (Apprendi, at p. 490; People v. McGee (2006) 38 Cal.4th 682, 709 [42 Cal.Rptr.3d 899, 133 P.3d 1054].) As our Supreme Court explained in McGee, this exception to the right to a jury "is not limited simply to the bare fact of a defendant's prior conviction, but extends as well to the nature of that conviction, thereby permitting sentencing courts to *1367 determine whether the prior conviction is the type of conviction (for example, a conviction of a `violent' felony) that renders the defendant subject to an enhanced sentence." (People v. McGee, supra, 38 Cal.4th at p. 704; see also People v. Black (2007) 41 Cal.4th 799, 819 [62 Cal.Rptr.3d 569, 161 P.3d 1130] [reaffirming McGee on this point].) Therefore, Skiles was not entitled to have a jury decide whether his Alabama conviction constituted a serious felony for purposes of the Three Strikes law. No Sixth Amendment violation has been shown.
(2) Skiles also contends the offense for which he was convicted in Alabama, i.e., manslaughter, does not qualify as a serious felony.[2] The list of felonies that qualify as "serious" for purposes of the Three Strikes law is set forth in section 1192.7, subdivision (c). (See § 667, subd. (d)(2).) That list includes voluntary manslaughter, but it does not include involuntary manslaughter. (§ 1192.7, subd. (c)(1).) This is important because, as more fully explained below, Skiles's Alabama manslaughter conviction arose from his reckless operation of a motor vehicle and is thus akin to the involuntary form of that offense. However, for purposes of section 1192.7, subdivision (c), a serious felony also includes "any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice . . . ." (§ 1192.7, subd. (c)(8).)
None of this was lost on the trial court. In fact, it expressed a keen awareness of this statutory framework. And ultimately, it determined Skiles's manslaughter conviction constituted a serious felony because, during its commission, Skiles personally inflicted great bodily injury on a person other than an accomplice within the meaning of section 1192.7, subdivision (c)(8).
Skiles asserts this was error. Relying on People v. Cook (1984) 158 Cal.App.3d 948 [205 Cal.Rptr. 105], he argues the Legislature's failure to specifically include the crime of involuntary manslaughter in subdivision (c) of section 1192.7 precludes the conclusion that his Alabama prior constitutes a serious felony for purposes of that provision. However, the Cook decision "has been effectively superseded as authority by the Supreme Court's opinion in People v. Equarte (1986) 42 Cal.3d 456 [229 Cal.Rptr. 116, 722 P.2d 890] and by the Second District's subsequent opinion in People v. Brown (1988) 201 Cal.App.3d 1296 [247 Cal.Rptr. 683]." (People v. Gonzales (1994) 29 Cal.App.4th 1684, 1692 [35 Cal.Rptr.2d 450].) As the law now stands, a *1368 felony that is not specifically included on the list of enumerated offenses in section 1192.7, subdivision (c) will nonetheless be considered a serious felony under that section "if in the commission of the crime the defendant personally inflict[ed] great bodily injury on any person other than an accomplice. [Citation.]" (People v. Gonzales, supra, 29 Cal.App.4th at p. 1694.)
That brings us to the heart of Skiles's appeal, namely that there is insufficient evidence to support the trial court's finding he personally inflicted great bodily injury on a person other than an accomplice in committing his Alabama offense. The state's evidence on this issue included a certified copy of the grand jury's true bill in the Alabama case. That document, which was included in exhibit 16, shows that in 1995, Skiles was indicted on charges of manslaughter (count 1), driving under the influence of alcohol (count 2), and vehicular homicide (count 3). Exhibit 16 also includes a "Case Action Summary" sheet, akin to a minute order, and Skiles's plea agreement. These documents evidence the fact that Skiles pleaded guilty to the manslaughter charge in count 1 in exchange for a 10-year prison sentence and a dismissal of the remaining charges.
However, none of these documents contains a factual description of the charges. Exhibit 16 did include one other document, a certified copy of a single page of the indictment, but the only charge set forth and described on that page is the vehicular homicide charge alleged in count 3. The factual basis for the manslaughter count is not described on that page or in any of the other documents included in exhibit 16.
Recognizing this, the prosecution introduced another page of the indictment as part of a subsequent exhibit, exhibit 18. This document contains the factual and legal basis for counts 1 and 2. As to count 1, the manslaughter charge, the document states Skiles "did recklessly cause the death of Jason Troy Latham by failing to yield the right of way to . . . Latham by running a red light and did thereby cause the motor vehicle which he was driving to strike a motor vehicle being operated by . . . Latham, in violation of 13A-6-3 (a)(1) of the Code of Alabama [defining manslaughter as recklessly causing the death of another], against the peace and dignity of the State of Alabama."
Unlike the documents in exhibit 16, however, this particular document was a copy of the original certified copy of the Alabama indictment. Defense counsel objected to the document on this basis, but the trial court overruled the objection and found the prosecution had proven beyond a reasonable *1369 doubt that, in committing manslaughter in Alabama, Skiles personally inflicted great bodily injury on a person other than an accomplice. Therefore, it determined the crime qualified as a serious felony under California law and enhanced Skiles's sentence accordingly.
Skiles renews that objection, contending the indictment page included in exhibit 18 was not properly authenticated because it is a copy of the original certified copy. While the document includes a certification stamp and the signature of Alabama court clerk Missy Homan Hibbett, Skiles questions whether the certification is legitimate because the initials "DM" appear next to Hibbett's signature. He argues these "mysterious" initials raise considerable doubt as to who actually certified the exhibit and whether that person actually had the authority to do so.
(3) We disagree. A certified copy of an official record can be used to prove the contents of the record. (Evid. Code, § 1530; People v. Delgado (2008) 43 Cal.4th 1059, 1066 [77 Cal.Rptr.3d 259, 183 P.3d 1226] [noting that a "common means of proving the . . . nature of a prior conviction is to introduce certified documents from the record of the prior court proceeding"].) In addition, a copy of a certified copy of an official record is admissible for this purpose, unless there is a genuine dispute concerning its terms and justice requires exclusion of the copy, or admission of the copy would be unfair. (Evid. Code, § 1521, subd. (a); People v. Atkins (1989) 210 Cal.App.3d 47, 53-55 [258 Cal.Rptr. 113].)
The indictment page included in exhibit 18 is a copy of a certified copy of an official document from the Circuit Court of Alabama. Although the initials of an unidentified person appear next to the signature of the certifying clerk, there is no genuine question as to the authenticity, contents or material terms of the writing. As the trial court below noted, the indictment page in exhibit 18 is similar to, and internally consistent with, the indictment page in exhibit 16, which is of unquestioned authenticity. Indeed, both pages of the indictment are from the same court, have the same date and are certified by the same court clerk.
Moreover, we know from the undisputed documents in exhibit 16 that Skiles was indicted not only for vehicular homicide, but also for manslaughter and driving under the influence of alcohol. Because the indictment page in exhibit 18 relates to those very counts, it is logical to presume that page is an authentic representation of counts 1 and 2 of the indictment. (People v. Gibson *1370 (2001) 90 Cal.App.4th 371, 383 [108 Cal.Rptr.2d 809] [a writing can be authenticated by circumstantial evidence or its content].) And, as we can think of no reason why it would be unfair or unjust to admit that page of the indictment into evidence, we uphold the trial court's decision to do so. (People v. Atkins, supra, 210 Cal.App.3d at pp. 53-55 [upholding the admission of prison records which were accompanied by a copy of a certification from the custodian of the records].)
(4) The only remaining question is whether the trial court could use the substance of the indictment sheet included in exhibit 18 as proof that, in committing manslaughter in Alabama, Skiles personally inflicted great bodily injury on a person other than an accomplice. The answer is yes. The trial court may consider the entire record of the prior conviction in determining whether the prior involved a qualifying offense for purposes of sentencing enhancement. (People v. Rodriguez (1998) 17 Cal.4th 253, 261-262 [70 Cal.Rptr.2d 334, 949 P.2d 31].) That includes any charging documents filed in the previous case. (People v. Henley (1999) 72 Cal.App.4th 555, 560 [85 Cal.Rptr.2d 123].) More particularly, the trial court may consider the indictment or information pertaining to the crime in question if the defendant pleaded guilty to that offense. (People v. Hayes (1992) 6 Cal.App.4th 616, 624 [7 Cal.Rptr.2d 866]; People v. Longinetti (1985) 164 Cal.App.3d 704, 706 [210 Cal.Rptr. 729].)
(5) Here, the record shows Skiles pleaded guilty to "count 1 of the indictment, manslaughter." And that count, as set forth in exhibit 18, alleged that Skiles ran a red light and drove his car into a vehicle being operated by the victim, Latham. Count 1 further alleged that in so doing, Skiles recklessly caused the death of Latham. Based on this record, there is sufficient evidence to support the trial court's finding that Skiles's conduct constituted a serious felony for purposes of the Three Strikes law. There is no reason to disturb this finding.

DISPOSITION
Skiles's sentence is modified pursuant to section 654 to stay execution of sentence on count 2, receiving stolen property. In addition, his presentence conduct credit is modified to 152 days, based on 305 days of actual custody, bringing his presentence credit total to 457 days. The clerk of the superior court shall prepare an amended abstract of judgment reflecting these modifications *1371 and send a certified copy of the amended abstract to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.
Sills, P. J., and Moore, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rule 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I.
[1] All further statutory references are to the Penal Code, unless noted otherwise.
[*] See footnote, ante, page 1363.
[2] Skiles did not raise this contention until oral argument, which makes it untimely (People v. Pena (2004) 32 Cal.4th 389, 403 [9 Cal.Rptr.3d 107, 83 P.3d 506]), but we will consider it nonetheless for the sake of judicial economy.